## Chesapeake & Ohio Railway Company v. Stephens.

(Decided November 28, 1930.)

BROWNING & REED, KIRK, KIRK & WELLS and COMBS & COMBS for appellant.

A. J. MAY and EDWARD L. ALLEN for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

The appellee brought this action against the appellant to recover for damages done a tract of land owned by him on Beaver creek and occasioned, as he claimed, by the obstruction of that creek and the diversion of its waters by the appellant, which owned a right of way on the opposite bank of the creek. The jury awarded him damages in the sum of $500, and from the judgment entered on that verdict, this appeal is prosecuted.

As grounds for reversal, appellant claims that it was entitled to a peremptory instruction; that the verdict is flagrantly against the evidence; that the instructions given were erroneous; and that the verdict is excessive.

So far as the first two grounds are concerned, there was evidence offered by the appellee to show that the appellant in constructing additional tracks along its right of way on the opposite bank of Beaver creek had by its method of construction, and by casting debris into the creek, diverted the water from its ordinary course and channel and thrown it upon the lands of the appellee. The appellant's evidence was to the effect that it had not placed any obstructions in the creek and that the embankment it had constructed for its tracks did not cause any diversion of the course or channel of the water, but that what water had been thrown upon the appellee's land was thrown there by a cliff of rocks just above the appellee's land. The appellant further introduced proof to show that the washing of appellee's land, of which he complained, had been caused by a very extraordinary flood that had occurred prior to the construction of the additional tracks by the appellant. From this very brief resume of the case, it is evident that it was for the jury to say which version it believed and that there was ample

evidence to sustain its verdict to the effect that the appellee's land had been washed after the extraordinary flood of 1927 and that this washing had been caused by the diversion of the water due to appellant's embankment and the debris it had thrown into the creek.

Complaint is made of the second instruction because the court permitted the jury to find a verdict for the appellee for any diversion of water occasioned by any obstructions placed in the creek within five years next before June 10, 1929. Appellant says that there was no evidence that there had been any obstructions placed in the creek until after the flood of 1927, and in this appellant is correct. But because of that very fact, the jury could not have been misled by the instruction given by the court, and hence even if the latitude of time allowed the jury was unwarranted, a question we need not decide, it certainly was not prejudicial. The refusal of the instruction offered by the appellant likewise was not prejudicial. By that instruction, appellant asked the court to tell the jury that if the washing of the appellee's land was caused by an extraordinary flood, then the jury should find for the appellant. But there was no evidence that there had been any extraordinary flood after 1927 or after the obstructions had been placed in the creek as shown by appellee's evidence, and the court restricted the jury to a finding for the appellee to such damages as had been occasioned him by the diversion of the water occasioned by the obstructions placed in the creek. Therefore there was no evidence upon which to base the instruction which appellant requested.

The judgment, however, must be reversed because the verdict is grossly excessive. According to the appellee's own proof, less than one-half an acre of land was washed or damaged. Even appellee's witnesses admit that the land washed or damaged was very low land, subject to overflows in the normal spring tides, and was suitable only for agricultural purposes. Although it was located near a small village, it could never be utilized for building lots, because of the periodic overflows to which it was subject. Prior to the obstructions compained of, these overflows filled the land and made it more fertile. After the obstructions had been placed in the creek, according to appellee's testimony, the floods washed the land. Appellee introduced a witness who testified that this agricultural land was worth $1,000 an acre; the appellant, one who said that it was worth at the best only

$200 an acre. The damages awarded in this case can be sustained only on the basis that the washed land was worth $1,000 an acre. In the cases of Warfield Natural Gas Co. v. Lafferty, 232 Ky. 248, 22 S. W. (2d) 611; Warfield Natural Gas Co. v. Hammons, 233 Ky. 48, 24 S. W. (2d) 933; Warfield Natural Gas Co. v. Alley, 233 Ky. 323, 25 S. W. (2d) 724; Warfield Natural Gas Co. v. Banks, 233 Ky. 323, 25 S. W. (2d) 724; Warfield Natural Gas Co. v. Goble, 232 Ky. 855, 22 S. W. (2d) 1116; Warfield Natural Gas Co. v. Hammons, 233 Ky. 257, 25 S. W. (2d) 397; Warfield Natural Gas Co. v. Peters, 232 Ky. 856, 23 S. W. (2d) 1114; Warfield Natural Gas Co. v. Shepherd, 233 Ky. 254, 25 S. W. (2d) 397; Warfield Natural Gas Co. v. Wills, 233 Ky. 246, 25 S. W. (2d) 395; Warfield Natural Gas Co. v. Wills, 233 Ky. 254, 25 S. W. (2d) 396; Warfield Natural Gas Co. v. Wright, 233 Ky. 378, 25 S. W. (2d) 1036; Warfield Natural Gas Co. v. Stevens, 233 Ky. 694, 26 S. W. (2d) 534, all of which were condemnation proceedings, we declined to uphold verdicts for land condemned based on a valuation of $1,000 per acre for agricultural lands, suitable only for that purpose and located near to no large urban center. Those cases were all from the same county as the instant case, and the character of the land there involved was not materially different from the character of the land in this case. From what we said in those cases, it undoubtedly follows that the valuation of $1,000 per acre put upon the land in this case cannot be sustained and, if it cannot, it also follows that the damages awarded are excessive. See, also, Chesapeake & O. R. Co. v. Weddington, 231 Ky. 745, 22 S. W. (2d) 131; Elkhorn & B. V. R. Co. v. Hagans, 208 Ky. 497, 271 S. W. 587.

The judgment is therefore reversed, with instructions to grant the appellant a new trial in conformity with this opinion.